We'll hear argument first this morning in Case 13-132, Riley v. California. Mr. Fisher. Mr. Chief Justice, and may it please the Court. This case involves applying the core protection of the Fourth Amendment to a new factual circumstance. It has always been the case that an occasion of arrest did not give the police officers authority to search through the private papers in the drawers and bureaus and cabinets of somebody's house. And that protection should not evaporate more than 200 years after the founding because we have the technological development of smartphones that have resulted in people carrying that information in their pockets. Just to test the principle for why the police can search and seize some objects, consider a gun. The arrestee has a gun on his person, and the police take the gun. Is part of the reason for that seizure to obtain evidence of the crime, or is it just for the safety of the officer and the safety of the community? Well, what this Court said in Robinson, at page 235, is the reason supporting the authority for a search incident to arrest are the two Shimmel factors, which are gathering evidence for to prevent its destruction and officer safety. Now, again, I don't believe that. What about gathering evidence in order to make the crime? For instance, with the gun, could they take fingerprints? The gun is in the police station where the arrestee is being booked. A, could they take fingerprints? B, could they copy the serial number? C, could they see how many shells were left in the chamber? They obviously have to empty it for safety purposes. All for the purpose of building the case, of obtaining evidence. Yes. Of course, that's done every day. Once the gun is in the police department's lawful possession, I think Edwards says that they can do all that. So if the proposition, then, if the principle, then, is that some objects that are obtained from the arrestee can be examined in order to build the State's case, is that at least a beginning premise that we can accept in your case, although obviously there are problems of this extent and intrusiveness of the search that are in your case but not in the gun hypothetical? Well, Justice Kennedy, the Court has never described that as one of the things. If you want to think about this case the way you thought about the automobile search in Gantt, it would be a beginning premise. But I think you're right that even if that were a beginning premise, it would be only that, a beginning. In footnote 9 in Edwards, this Court said that any search incident to arrest still has to satisfy the Fourth Amendment's general reasonableness. I think you're right that Gantt is probably the best statement in support of the principle that I've suggested. And then you might say, well, that's limited to automobiles. And then we're back to where we started. Right. And there's important things to understand if you want to start thinking about Gantt, because both in terms of its history and its modern application, it's dramatically different from what we have here. Well, Mr. Fisher, before we do that, have you been accurate in what you said about Robinson and about the Court's cases in Weeks, which was quoted in Robinson? The Court said the right always recognized under English and American law to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. Is that historically inaccurate? Do you want us to repudiate that? No, Your Honor. What Weeks said is that, you quoted it, fruits and instrumentalities of the crime have always been something that could be seized from a person. Now, Weeks, of course, as this Court said in Robinson itself, was dicta. And there was that historical authority to take fruits and evidence – I'm sorry, fruits and instrumentalities of the crime. Did it say instrumentalities or evidence? Which did it say? Weeks used – Justice Alito said evidence. You changed it to instrumentality. Is one of you wrong? Weeks uses the word evidence, but, Justice Scalia, because it was not at issue in that treatise that you cited in your Thornton concurrence, talks about tools and instrumentalities. Now, I don't think we have to debate that here, because even if we're in a world where the police can seize some evidence and keep it and use it for the prosecution simply for that reason, even if they don't fear destruction, there are still very, very profound problems with searching a smartphone without a warrant. Because even under the Robinson rule, this Court has recognized, for example, when it comes to blood draws, search – something like a strip search that might occur at the scene, there are limits even to the Robinson rule. So it brings us to this point. Alito, Smartphones do present difficult problems, but let me ask you this. Suppose your client were an old-school guy and he didn't have – he didn't have a cell phone. He had a billfold and he had photos that were important to him in the billfold. He had that at the time of arrest. Do you dispute the proposition that the police could examine the photos in his billfold and use those as evidence against him? No. That's the rule of Robinson, that any physical item on an arrestee can be seized and inspected and then used as evidence if it's useful evidence.  Alito, Smartphones do present difficult problems, but let me ask you this. What is the difference between looking at hard copy photos in a billfold and looking at photos that are saved in the memory of a cell phone? The difference is digital information versus physical items. Physical items at the scene can pose a safety threat and have destruction possibilities that aren't present with digital evidence. What is more, once you get into the digital world, you have the Framers' concern of general warrants and the writs of assistance that are— How does that apply to these hard copy photos in the billfold? They don't present a threat to anybody. And I don't see that there's much of a difference between — the government argues there's a greater risk of the destruction of digital evidence in a cell phone than there is in the photos. So I don't quite understand how that applies to that situation. Well, let me take those one thing at a time. I take it the theory of Robinson, this is the theory the government itself propounded, is that any physical item, because it could contain a razor blade or a pin or anything, needs to be inspected to be sure. And so you have a categorical rule, because of the ad hoc nature of arrests, that police don't have to distinguish physical items one from the other. But— But in the wallet, we'll just stick with Justice Alito's hypothetical. They find a business card or something which shows a car rental service. Can they turn the card over and read it? They're not looking for a pin or an explosive. They're trying to read what's on the card. Can they do that? I think they can, if nothing else, under plain view. Once it's in their hand, Justice Kennedy. But I really don't want to fight— No, they turn the card over. I think that is fine under the categorical rule. I think what you have in Robinson is a categorical rule that obviates these exact difficult case-by-case determinations. You could make an argument, and if I needed to, if it were a diary case or a billfold case, you might be able to make an argument. But I think the Court wisely decided under Robinson that we need a categorical rule that's easily administrable in the field. Now, when you have digital evidence, the categorical rule we submit cuts exactly in the opposite direction, because digital information, even the notion of flipping through photos in a smartphone, implicates vast amounts of information, not just the photos themselves, but the GPS, GPS locational data that's linked in with it, all kinds of other information that is intrinsically intertwined in smartphones. Including information that is specifically designed to be made public. I mean, what about something like Facebook or a Twitter account? There's no real, there's no, any privacy interest in a Facebook account is at least diminished, because the point is you want these things to be public and seen widely. Well, Mr. Chief Justice, I just, my question would be, could you have a rule that the police are entitled to search those apps that, in fact, don't have an air of privacy about them? I think that would be extraordinarily difficult to administer that rule, and let me tell you why. Because most of the information on smartphones is private. Much of it is just like the photos in this case, just kept on somebody's phone and not shared with anybody. Even a Facebook account is a limited universe of people who have access to it. You're right, that's not a limit. Or less limited. I mean, you know, maybe it's 20 people, maybe it's 100 people, but it's certainly not private in the sense that many of the other applications are. I think it's fair to say you have a sliding scale, and there's some stuff on a phone that might be posted on the Internet, for example. The difficulty with that case, if you wanted to address it in a future case, would be the intertwined nature of information on a phone. So looking at those photos in a smartphone account will be linked to the contacts inside the phone. It will be linked to GPS information inside the phone. All of this information is intertwined, and I think you'd have a difficult administrability problem if you wanted to create some sort of rule like that. Now, remember, the government might try to deal with that problem differently by saying information in the cloud, so to speak, is not accessible to officers. We submit that just further would compound the difficulty of applying a rule in this  But let's go to the next question. Alitoso, do you think in this case we have to decide whether all the information that may be available in a smartphone can be examined by the police when the owner of the phone is arrested, or can we just focus on the particular evidence that was admitted in your client's trial? Well, the way you've phrased the question, I think that's what the first cut at this is, looking at the particular pieces of evidence here, which are photos and videos. But we don't think you can write an opinion that would distinguish those from anything else on a almost anything else on a smartphone. I mean, the State's argument here is that those are not, quote, fundamentally different from other things that people would carry around with them. Do you think you could have obtained a warrant or that the police could have obtained a warrant in this case? In all likelihood, yes, Justice Kennedy. And they had plenty of time to do so. Well, then, the evidence that's seizable under the warrant is reasonable. And Justice Alito points out to the fact that some of this evidence is reasonable. There's a limitation with reference to the way the police behaved. As Justice Alito points out, it's limited just to this evidence. Well, let me say a couple of important things about the warrant requirement, then return to Justice Alito's question. This Court has said time and again that the mere fact the police could have gotten a warrant but didn't does not excuse a Fourth Amendment violation. Let me say a couple of things about the warrant requirement and then return to Justice Alito. Well, but it just goes to the fact that this is searchable under Fourth Amendment standards. With the warrant, Justice Kennedy, and let me talk about why a warrant is so important. First of all, it interposes a neutral observer in between the citizen and the police officer. Perhaps more importantly, it does two very big things. One is it can trigger the Fourth Amendment's particularity requirement so that the magistrate can say this is what you can look at and what didn't. Remember, in this case, the prosecution ultimately introduced photos and videos, but that's not what the detective testified to at trial as to the scope of his search. He said at JA11, we looked at a whole lot of stuff on the phone, and this is — that's just what, in his words, caught his eye. So how would it work for the magistrate? I mean, you recognize, you just told Justice Kennedy, that a warrant could be obtained. A warrant for what? What would the police have to show? And let's take your very case. So they have seized, which is proper, seized the phone, they've secured it, and now they want to search it. So they apply for a warrant, and what would the warrant have to say? We give an example of a warrant in the footnote in our reply brief. I believe it's footnote 3, Justice Ginsburg. And there are many more available on the Web from States that already require warrants. What they do is they say the police officer testifies, perhaps somewhat like he testified here at the suppression hearing. I suspected this fellow was in a gang, and I believe gang members keep certain kinds of things on their phone. This is the kind of crime that we're investigating, and therefore these particular files within the phone are likely to obtain evidence. And then what happens is the warrants say, with particularity, here's the things you can look at, here's what you can't. More importantly, Justice Ginsburg, a warrant requirement. Sotomayor, you've told us that's hard to figure out, what you can and what you can't. But it's easy for a magistrate, but impossible for an arresting officer? I think much easier for a magistrate at some remove than an officer under the stresses in the field. Now, Justice Scalia, I agree, it's not going to be perfect. And so let's look at what happens under our world. Roberts. On the same lines as Justice Scalia, the point you make elsewhere in your briefing argument is that the cell phone or the smart phone has everything. It's got the person's whole life. Well, if you're arresting somebody on the grounds of suspicion that he's a gang member and you have evidence to support that, what part of the smart phone is not likely to have pertinent evidence? What application is not? I mean, here you've got pictures, you've got videos, you've got call. I just — I guess it's similar to what other issues have been raised. I don't know what a magistrate is supposed to put in the warrant. I would say his banking app, his online dating app. You don't think his banking app is going to say, on this day he deposited $10,000 into his account? And then that's going to coincide with a particular drug deal. Well, Mr. Chief Justice, we — those arguments can be made on an app-by-app basis. But what happens is, this is the benefit of our rule as opposed to the government's. What the government says is, let the officer look and then have a back-end hearing where you just suppress all the stuff that he wasn't supposed to look at once you apply particularity requirements. Under our rule, once the officer has the warrant, Leon kicks in, and so you don't have to have all these hearings in district courts, because once an officer does a proper search according to the corners of a warrant, you don't have to have the kind of suppression hearing. And there's one other very important thing that goes into a warrant, which might have been glossed over too quickly in the briefs. It's not just what can be looked at. It's how it can be kept. And retention of information raises extraordinary Fourth Amendment concerns. My understanding in California is, at least for some crimes, it's not just that they're doing it for the crime of arrest, but they're keeping this information in databases, ever-growing databases of every cell phone that they've ever used. Roberts, what if you have a device that doesn't have the broad information that a smartphone has, but only a very limited, like a Fitbit that tells you how many steps you've taken, and the defendant says, I've been in my house all afternoon, and they want to check and see if he's walked 4 miles? It's not his whole life, which is a big part of your objection. Is that something they can look at? I think probably not. And I think this is the way the categorical rule in Robinson, where it sweeps in the kind of hypotheticals we were talking about in one direction. I think a categorical rule in the other direction for digital information would sweep in the Fitbit. I mean, obviously, I don't have to win that argument today, but I think that's how you would approach that question. Remember, the Fitbit, and this is true even more so of smartphones, tells you just the kind of information the Court was very concerned about in Kylo. It tells you modern smartphones work the inside of people's house. They work the appliances and they have cameras. They also monitor the inside of people's bodies. So we're going to have to look at that. Alitoso What if the phone in this case was an old-fashioned flip phone? So it had the capacity to take pictures, but a much more limited memory. Would it be a different case? Well, I think you may want to – that will be part of your conversation in the next case, perhaps. I think the easiest way to decide the case right now in 2014 is simply say digital evidence kept on modern cell phones are different than physical items. I don't think it's really worth going back in time to the most rudimentary  Sotomayor Mr. Fisher, what if the person had on his person a compact disc with photos saved on that? Fisher I think that might be the same kind of case as you have now. Remember, the phone in this case had a removable memory card, as many still do, which by the way, we were going to talk about the destruction of evidence. That's one answer to the destruction of evidence problem. It couldn't possibly have arisen with respect to the evidence at issue because it was on a removable memory card that couldn't be erased remotely or password protected. Now, we've given lots of arguments in the brief that explain why the government's arguments as to wiping simply don't stand up. Sotomayor Mr. Fisher, were you an earlier question. You didn't finish the answer. You were describing a difference between the downloading by police into databases that they keep forever. What happens with materials that are returned pursuant to a search warrant? Are they precluded from doing that? Fisher No. Sotomayor I wasn't sure I understood your. Fisher Right. So I take it that the ordinary rule is if the police lawfully sees evidence in a physical world, if it's a physical item, it might at some point have to be returned to the owner of it. But if it's something that can be made a photocopy of or a photo, you know, it remains in police files. It's lawfully obtained information they can use indefinitely into the future. You have real problems, however, when you apply that typical rule to digital information because now, again, what I understand, the government itself and the Federal government in footnote 3 of its reply brief in Worry acknowledges that it's keeping in a ever-growing Federal database at least some of the information seized from smartphones. Sotomayor I'm sorry. I don't know that you've answered my question. Fisher I'm sorry. Maybe I didn't understand. Sotomayor Which can they do the same thing once a search warrant is issued? Fisher Oh, no. Well, not necessarily because the beauty of a search warrant is it can delineate retention rules. It can say here's how long you're allowed to keep the information, here's who's allowed to look at it and who's not. And it can. Sotomayor Frankly, I have to tell you, I don't ever remember a prosecutor coming to me with that kind of delineation. Fisher Well, I think that, Justice Sotomayor, that is what is starting to now happen in the digital world because we just have new and different concerns that had arisen in the past. Kagan Mr. Fisher, would there be exigencies that would allow police to look at cell phones? And if so, what would those exigencies be? Fisher Absolutely. There would be times at the scene where exigencies would allow it. First of all, the two officer safety arguments the other side makes about a hypothetical bomb or a Confederate ambush, as this Court already recognized in Chadwick, would give exigent circumstances. The concern about remote wiping, we think, and as the experts have described in the amicus brief filed by Epic and many others, we don't think would ever give rise to a exigent circumstance. In a very odd world, yes. Scalia I don't understand your first exigent circumstances, when there is a bomb, but you can't, you don't know whether there is a bomb until you look in the phone. Whether his associates are on the way to, you know, to kill the officer and release their Confederate, you don't know until you look into the phone. So how can that possibly be an exigent circumstance? Fisher Well, I think surrounding facts and circumstances, and footnote 9 in Chadwick, what the Court said, dealing with a locked briefcase, where you'd have the same problem, Justice Scalia. Surrounding facts and circumstances might indicate. There's a hypothetical, I believe it's on page 1 of the amicus brief filed by the State investigative agencies, that I think gives a classic textbook example of how exigent circumstances might apply. Scalia It seems to me it would almost never, never be able to say, you know, surrounding to suspect that there's a bomb in the phone or give me reason to suspect that his Confederates are on the way. Fisher I think you're right that that's going to be an extraordinarily rare circumstance. All I'm saying is if you had that extraordinarily rare circumstance, you would not need to get a warrant. Kennedy There's not much authority that I could find. If the lawyer is arrested and they want to read his whole briefcase or you want to I think it's page 7 of your brief, the learned hand, 1916 case. Is that about the best discussion you can find? I didn't find anything much different. Fisher Justice Kennedy, we looked high and low as well and did not find cases involving briefcases full of documents. And there's only one or two stray mentions of a diary. Judge Friendly also mentions the diary situation. Kennedy Because it's important if we're going to try to formulate some standard which limits the extent of the search. And that's one of the problems in this case. If, say, we rule for the government in its case, maybe it's not quite fair to ask you, but if we rule for the government in its case, in Worry, for the Federal case, and there's no, it's not an exigent circumstance, is there some standard where we could draw the line which would still result in a judgment in your favor? Maybe that's not quite a fair question. You're not answering, you're not arguing the government's case. Fisher I don't want to tread on both lawyers in that case. But certainly in my case, we have an exploratory search where not even the State has contended the amount of information looked at is equivalent to what somebody could have carried around in the old days. Can I say something? Roberts I'm going to say something first. Fisher Okay. Roberts If the phone rings, can the police answer it? Fisher There are cases on that, Mr. Chief Justice. Obviously, this Court hasn't addressed them. All the cases we've found are cases where the police already had a warrant in hand and they've been held to yes, the police officers can answer the phone in that circumstance. Unquestionably, the police officers could look at the screen. Scalia A warrant for what? A warrant for examining the phone? Fisher For somebody's arrest. Scalia For somebody's arrest. Well, how does that extend to your ability to answer his phone? Fisher No, I'm sorry, Mr. Justice Scalia. I think also in, to effectuate an arrest and an immediate search of the area. Now, certainly you could look at the caller ID coming through because that would be in plain view, but if I can return to Justice Kennedy's question about the diary, because there's a couple of important aspects to that that I hope to be able to draw out. The reason I think that you don't find diary cases when you look for them is because people hardly ever carry a diary outside the home with them. It was kept in the private drawer in the bedroom or wherever it might be kept. And in the highly, highly unusual circumstance where somebody did, you might have a hard case. This is an, this is the opposite world. The modern reality of smartphones is that it is an indispensable item for everyday life of a modern professional and indeed most anyone. You can't leave the house without it and be, consider yourself to be responsible and safe. And so you take a, to take the world where the police might try to say we can get the stray diary because of the importance of a categorical rule under Robinson and try to apply that into a world where everybody has everything with them at all times. Kennedy, the Fourth Amendment has a balance already built in, in that respect. We're not saying they can't look at digital information. We're just saying that when they seize it, they can freeze the contents and then they're allowed to search and keep it under the rules of that warrant. All of that. Roberts. Is it significant in this case that the information was not protected by a password? No. I don't think either side. That doesn't affect the expectation of privacy? If the other side were making an argument that this wasn't even a search, then I think that might be an argument they would deploy. But I think, and I don't want to speak for the government, but I think that they also agree that password protection doesn't matter. And it certainly doesn't matter under their argument as to what information they get. I mean, their position is if we seize a corporate executive's smartphone at the scene that is locked and protected under password, if we can get that information out back at our lab, we get it all. And we don't have to ask for a warrant, and we can keep it as long as we want. No. I know they argue that it doesn't matter, but I'm just wondering if you — if your position is weakened by the fact that the individual did not seek the greater protection of a password. No, I don't think so. People don't lock their homes. They don't lock their briefcases. Simply having it inside the smartphone, protected on the person, is enough to trigger the Fourth Amendment and I think to sustain the arguments I've advanced. If I could reserve the rest of my time. Thank you, counsel. Mr. Dumont. Thank you, Mr. Chief Justice, and may it please the Court. As Mr. Fisher has said, if Mr. Riley had been carrying physical photographs in his pocket at the time of his arrest, there is no dispute that arresting officers could have looked at those photographs to see whether they contained evidence of crime. Now, what would have been reasonable in that situation does not become constitutionally unreasonable simply because Mr. Riley instead carried his photographs in digital form on a smartphone. The shift to digital format does not make the photographs any less his papers or her fax. So in one of our court decisions in the past, a series of justices asked whether or noted that many of our rules were based on practical considerations. Practically speaking, a person can only carry so much on their person. That is different because carrying a billfold of photographs is a billfold of photographs. It's, you know, anywhere from one to five generally, not much more. But now we're talking about potentially thousands because with digital cameras, people take endless photos and it spans their entire life. You don't see a difference between the two things. What has now become impractical, a GPS can follow people in a way that prior following by police officers in cars didn't permit? We certainly see a distinction and we certainly see the possibility that in some cases there could potentially be a constitutional difference. What we don't see is that in this case, on the facts of this case or anything like it, like the ordinary case, there is a constitutional difference from those phenomena. The theory, even if I'm carrying only five photographs or if I'm carrying two letters, as was the case in the Chiagos case, for instance, that then-Judge Cardozo decided in the 20s, they are likely to be very personal, very private photographs. So I'm not sure that the expansion of volume increases the invasion of privacy. Kagan. Mr. DuMont, on your argument and on the government's, the Solicitor General's principle argument, too, a person can be arrested for anything. A person can be arrested for driving without a seat belt. And the police could take that phone and could look at every single e-mail that person has written, including work e-mails, including e-mails to family members, very intimate communications, could look at all that person's bank records, could look at all that person's medical data, could look at that person's calendar, could look at that person's phone number, could look at the number of times that person had been recently because that person was arrested for driving without a seat belt. Now, that strikes me as a very different kind of world than the kind of world that you were describing where somebody has pictures of their family in a billfold. Doesn't it strike you that way? I think the answer there, one can always think of marginal cases where there might be concern. It is not the core case. I don't know why this is a marginal case. It is not the core case. Your argument and the solicitor general's principle argument applies to any arrest, and it applies to everything on a cell phone. People carry their entire lives on cell phones. That's not a marginal case. That's the world we live in, isn't it? We hear that repeatedly. The facts of this case are not somebody's entire life on a cell phone. This cell phone had a handful of contacts. I don't think this is on the record, but what we understand is there were 250-some-odd contacts, there were about 59 photos, and there were perhaps 42 videos that were arranged at 30 to 45 seconds, maybe a minute each. Ginsburg. The Court is to make a rule not for this particular case, but for this category of cases. And I think what Justice Skingham pointed out is very nervous concern, that is, take an offense like failing to buckle up, even driving under the influence, not gang crimes, which is what we have in this case. It's your rule, then, that the cell phone is fair game no matter what the crime, no matter how relatively unimportant the crime. It's all misdemeanors, all misdemeanors, and that opens the world to the police. It is true that the Court, typically and properly in this area, draws categorical lines, and that is what the Court said in Robinson it was doing. Now, it also is true the Court has repeatedly said that those lines are drawn based on the generality of cases. They are not drawn based on the marginal case or the hypothetical potential problematic case. Now, this case is in the heartland. It's a violent case. Well, Mr. Dumont, I guess what I'm trying to suggest to you is that you call it marginal, but in fact, most people now do carry their lives on cell phones, and that will only grow every single year as, you know, young people take over the world. I mean, that's not a marginal case. That's what their computers, they have as much computing capacity as laptops did 5 years ago, and everybody under a certain age, let's say under 40, has everything on them. I think you need to look at the generality of cases, and in the generality of cases, first of all, you will not be dealing with minor crimes. You'll be dealing with serious crimes. And second, you'll be dealing with police who are trying to do their job by looking at the computer. Kennedy, are you saying we're just resting on the discretion of the officer? Because if that's so, then that leads to the next question, well, if that's so, then we'll get a warrant. I'm saying that you're trying to draw lines that can be applied by the officer in the field, and often when there is not time to get a warrant, either because there's a need to know the information now or because of the need to get a warrant. Kennedy, let's leave exigent circumstances out of it. That's an easy case. You're not arguing for exigent circumstances here. What I'd say is that, to go back to Justice Scalia's point, our argument is that the same things that Mr. Fisher concedes, the same interests that Mr. Fisher, I think, concedes justify the search of the person and the seizure of the phone, which are the exigent circumstances-type arguments. In other words, they are the need to protect officer safety and the need to preserve evidence. And the fact is you don't know with a phone, the officer doesn't know with a phone whether there's a safety concern or whether there's an evidentiary concern without looking at the phone. Roberts, is there any basis for the generality that there's a safety concern? Do you have a case where the – certainly not where the phone exploded, but when the phone was used to trigger a device or anything like that? We don't have a specific case. What I can point you to- Do you have a general case? What I can point you to, here's a case from California. I don't think it's cited in the briefs. It's called Natoli. There's one where there's a late-night arrest. It starts with a speeding ticket and it's off the highway late at night. It develops that, you know, maybe there's more going on. The person looks to be under the influence. He's taken out of the car. Then it looks like there might be a gun. When the officer looks at the cell phone, the first thing he sees when he turns the phone on is a picture of what appears to be the driver standing with two assault rifles, arms akimbo like this, posing with his assault rifles. Now, I would say that that changes the situational awareness of the officer in that situation and it provides valuable information that was necessary at the time and could not have been gotten later at the station house or at the ferry. What does that have to do with my question about a bomb? It's a – I'm merely saying it has to do with safety. So, no, I can't point you to a case where they stopped Timothy McVeigh and looked at his phone and saw some notes about bomb making. I can't give you that case. I would assume you need to operate the phone to set off the bomb, so that once the police have the phone, the bomb's not going to be set off. That is true, but it's also true of all the objects in all the Court's prior cases. In other words, once in Robinson the police had secured the cigarette pack, there was no question that whether there was a razor blade in it or just heroin, either the evidence was not going to be destroyed by weapons. Sotomayor, could I ask you a question about the extent of your theory? We're talking about smartphones, which are mini computers, but your theory would apply to iPads, computers, anything that's, for example, sitting next to a person in a car, at their desk if they're arrested at their desk, anywhere, if they're a lot of people carrying the iPad or something comparable, a tablet of some sort. Your theory would permit a search of all of those things if they're at their desk. My theory extends to objects that are on the person or immediately associated with, for instance, in a purse. It doesn't necessarily extend to things that are sitting nearby. The Court has drawn a clear line there. It's a line like the other line has. What is the rule? You're saying on the person. Suppose it's in the car in a holder or suppose it's in the passenger seat. Are you saying that's you don't want to express an opinion about that? You only want to talk about what's in somebody's pocket? I'll say I think the Court has drawn different rules for that situation. If it's on the car seat and if the person's been removed from the car, then under Gant, if there's reason to think there might be evidence of the crime of arrest on the phone, they can search it, and if there's not, they can't. I think that's the rule the Court drew, but it's a different rule under Robinson. Well, suppose I'm carrying my laptop in my backpack? And if your backpack is on your back when you're arrested, yes, we think that's included. So let me go back to this volume question, because there are two things about a cell phone that might justify some sort of special rule. There's the volume question and then there's the connectivity and networking question. Now, as to the volume question, first of all, we don't really have it here, but I concede that we could have it in other cases. And what they seem to be really concerned about is the idea that if you have enough information of enough different kinds on this device and the police spend enough time looking at it, they could build the kind of, you know, remarkable portrait that some of the Justices alluded to in Gant — or, sorry, in Jones, that really would be qualitatively different from what has ever been done before. Now, there are differences from Jones. That was government surveillance, and this is some choice the person has made to keep a certain amount of information on a phone and then to have it in his pocket. But we think there's a possibility you could get to that kind of qualitatively different search, but it is miles away from this kind of case and from the Heartland. Breyer. Okay. So what's your rule? Sorry? So I would — There are three possibilities. Possibility one, smartphone, no, get a warrant, unless exigent circumstances. Possibility two, yes, it's just like a piece of paper that you find in his pocket. Or possibility three, sometimes yes, sometimes no. All right. Which of those three is yours? Our possibility — our position is that the core information like this, that is contacts first. No, I mean of my three choices. I mean, call the first choice never, except exigent, without a warrant. Always, you don't need a warrant. Or three, somewhere in between. Which of the three choices is yours? It's in between with an explanation. In between. Okay. Now we're in between, then I get to my follow-up question. My follow-up question is, please tell me what your in-between rule is. Right. And my in-between rule with the explanation is that for information that is of the same sort that police have always been able to seize from the person, and that includes diaries, letters, all other kinds of evidence, purely evidentiary, photographs, address books, for evidence of that same sort, the same rule should apply. The digital format should not make a difference. And I would leave for a different day, sorry, but the last explanation to this is I would leave for another case, the question of whether the volume of the case. I'm sorry, Justice Kagan. Mr. Dumont, I guess I just don't understand that. You said if it could be. I mean, everything could be reduced to a piece of paper. All your bank records, you could have them on you. All your medical records, you could just happen to have them on you. I mean, that would be so of absolutely everything, wouldn't it? The bank records, of course, the police can get from the bank, because they are the bank's records, right, with a subpoena, not with a search warrant. So to the extent that a lot of people are going to get them, the notion that you could get them legally in some other way has never justified an illegal search otherwise. No, but I think it goes to the question of how sensitive is this information that we are being told is now routinely distributed. Your rule is sometimes. So I say sometimes, what's that? And you say, if it's the kind of thing that the police could have searched for if it wasn't on the computer, then they can search for it on the computer. Now, since they can search for everything in your pockets before when it isn't the computer, then why isn't yours everything? I mean, by the way, they don't know whether a call is or is not going to turn out to be evidence when it's in your trash box, if that's or wherever you put it, I don't know. They don't know that until they read it. So I guess what you're saying is, I thought it was Category 2 sometimes, but really it's Category 3 always. Now, why am I wrong? I think he inverted 2 and 3. Leaving that aside. That gives you time to think. If the police are looking for, have a legitimate investigative purpose for looking at the information on the phone, see whether there's evidence of the crime of arrest or of another crime, it seems to us that they should, at a minimum, be able to look at the same kind of information they could have looked at in any other previous context, the address book, the contacts, the phone numbers, the notes. Roberts But that's a significant concession on your part, isn't it, because the smartphones carry a lot of information that would not have been the sort of thing police could have looked at before. GPS tracking information. The police could never have gotten that before. So you're saying that is protected? Not saying it's protected. I'm saying I think it raises a different set of issues. It seems to me that in order to try to give some answer to Justice Kagan's concerns, that maybe the distinction ought to be between serious and non-serious offenses. I don't think that exists in our jurisprudence. Correct me if I'm wrong. I think that's correct. The Court has previously declined to draw that line. Now, another sort of rule that's not protected is that the police can't look at the   that showed where you had been and where you were going as long as it was on paper. Now, it's in a GPS. So how does your rule help? The GPS would see if he did, in fact, turn right at the thing or had gone somewhere else. I think the — again, we can conceive of situations in which the amount of information and the kind of search would lead to a qualitatively different result. We think that is — Alito, you could amend your answer, and the answers are for you, not for us. But you could amend your answer to say not just anything that somebody could have had. The person could have had a diary that records every place the person has ever gone in the last year, theoretically possible. But you could say something that has a realistic analog in the pre-digital era. We have a similar — a problem here that's similar to the problem in the Jones GPS case. You have a rule of law that was established in the pre-digital era. Now you have to apply it in the digital era, or you're asked to apply it in the digital era where the technology changes a lot of things. But if there is a close analog in the digital era to something that would have been allowed in the pre-digital era, that may be a different story. We certainly think that's right, and we think that that covers, you know, the information that was at issue here, the photographs, the short videos. It certainly covers address information, contact information. And you're not willing to limit your position to searches that either are in order to protect the officer or in order to preserve evidence or, number three, in order to find evidence of the crime of arrest. You're not willing to limit it that way. You would say whatever is on the person, you can — you can — you can search. We think of the available limits. That is by far the best historically based and the most plausible one. So to say that — and because the cases, the old cases, you point out there— I understand. They get you into the arrest for, you know, for not wearing a seat belt. And it seems absurd that you should be able to search that person's iPhone. And you can avoid that if you say, look, in the vast majority of cases, this is not going to be a problem unless the officer can reasonably be looking for evidence of the crime of arrest. That will cover the bad cases, but it won't cover the, you know, the seat belt arrest. We think that that could be a perfectly reasonable rule, and there's precedent in the Court, obviously, for that rule. There's two things we would say about that. First, it ought to be an objective standard in line with all of this Court's Fourth Amendment jurisprudence. It shouldn't depend on what exactly was written down on the — on the booking sheet. It should be, was there probable cause to arrest, or what crimes was there probable cause to arrest for? And it also should include a plain view concept. Breyer. Well, there's an analog with photos. The arrested person has photos, pre-digital age. Of course you can look at them. On the phone, there are photos, absolutely analogous, except they're 10,000. And that's, indeed, his entire life history in photos. All right? On your rule, can the policeman look at the photos by analog or not, because there are 10,000? Okay? What's the answer? In theory, yes, the police can look. In practice, what we have is, by the way, you understand where I'm going. I think there are very, very few things that you cannot find in analog, too, in pre-digital age searches. And the problem in almost all instances is quantity and how far afield you're likely to be going. So do I accept your rule? The fundamental doctrinal basis, rational basis of the Robinson rule, I think, is that the fact of arrest, this is what Justice Powell said and Justice Quill, the fact of arrest, is that the police will search the person and look at the things that they find. And that's what the person has chosen to carry on the person. Now, modern technology makes it possible for people to choose to carry a great deal of information. But that doesn't change the fact that the reasonable expectation, if a person is subject to a custodial arrest, is that the police will search the person and look at the things that they find. Kagan. Are you saying essentially that nobody has any expectation of privacy or that somebody has a dramatically reduced expectation of privacy in anything that the person actually wants to keep on them at all times? In other words, one has to keep one's cell phone at home to have an expectation of privacy in it? No. We're not saying that at all. But what we are saying is that people do make choices and those choices have consequences. And the consequence of carrying things on your person has always been that if you are arrested, the police will be able to examine it to see if it is evidence of crime. Thank you, counsel. Mr. Dreeben. Mr. Chief Justice, and may it please the Court. I think that it may be helpful to the Court, before exploring possible alternatives to a categorical Robinson rule, to at least briefly understand why there is a categorical Robinson rule and how cell phones implicate many of those concerns. The categorical Robinson rule responded to the fact that when a person is carrying something on their person and they are subject to a legitimate probable cause arrest, their expectations of privacy are considerably reduced, not eliminated, but considerably reduced. And the government, on the other hand, has several very compelling interests at the moment of arrest that are vindicated by conducting a thorough search of the person and the things he has. It avoids the destruction of evidence, it protects officer safety, and it allows the discovery of evidence that's relevant to the crime of arrest to enable prosecution. Now the question is, if the understanding was, when this time, get a warrant. So here you can seize the phone and you can secure the phone and you could go to a magistrate and within an hour get permission to search. But what is the reason for cutting out the magistrate here? It's not the instrument itself that's not going to be in any danger, because the police have taken it and they've disabled it. So I don't understand why we cut the warrant out of this picture. So several answers to that, Justice Ginsburg. The first is that you could probably say the same thing about almost everything that is seized under Robinson and Edwards. Once it's in the police's hands, they could throw it in the back of the patrol car in the trunk and it would be safe and they could go get a warrant. But the balance has always been struck at the moment of arrest to allow the officers to fulfill the compelling interests in the matters that I previously described. The second, and I think very critical thing about cell phones, is they do differ in the amount of information that a person can carry on them and the amount of revelation about a person's life. That is true. They also differ in that they greatly facilitate criminal activity, they contain a great deal of evidence, and most critically, they are subject to destruction in a way that ordinary physical items are not. Even if an officer has a cell phone in his hand, he cannot guarantee, unless it's disconnected from the network or somehow protected from the network, that there won't be a remote wipe signal sent to the phone that will wipe its data. Do you have cases where that has happened? I have anecdotal reports from the FBI that that has happened, that they have looked into the question of to what extent can you protect a phone through the use of things like Faraday bags. I think one of the important things to note is if you throw a phone into a Faraday bag, which is supposedly going to be able to block network signals, when you open it up, it has to be similarly shielded or it will pick up a signal from a cell tower and that will wipe the phone. And the FBI tried to build a Faraday room in a building that they later discovered Verizon had put up a cell tower on it, and that cell tower put out a strong enough signal to write through the Faraday room. But you don't You've had a couple of States where this has been so, where they've had a rule that you can't search, from Michigan, I think, and Vermont. And is there any instance out of those States where these scenarios have taken place? I can't speak, Justice Breyer, for the example of the States. But you don't know of any? I don't have any access to the information. Breyer, so isn't this a problem that might be postponed because we have warring technologies, et cetera? And is it you're saying now we should allow searches of all cell phones because there might be a technology that hasn't yet, in fact, been used in any of the States that have this rule? That sounds a little hypothetical. I'm not quite sure how to handle it. Well, I think that there is clearly the technology available and growing technology to wipe phones remotely. But the other critical problem that comes back to Justice Ginsburg's point about getting a warrant is encryption technology is increasingly being deployed in cell phones. That is something that clearly is on the rise. And when a phone is turned off or the lock kicks in and the phone encrypts, it can be almost impossible to get into How about putting Let me stop because you were making that argument in your brief, and I have three related questions, okay? Why can't you just put the phone on airplane mode? Can I answer that one first? Yes. First of all, it is not always possible to find airplane mode on all the 500, 600 models of phones that are out there. The officer has a lot of things to do when he arrests suspects. Say he arrests five suspects in a car and they each have three cell phones. Trying to find and put each one of them into airplane mode and then go the further step and You're confusing me because if you haven't searched on the scene, then the wipe is going to happen. If you've had enough time at the precinct to put it on airplane mode, the wipe hasn't happened. Well, it's not necessarily true, Justice Sotomayor. I'm a little confused about what this argument is. Either you do it at the scene and you protect the phone or you do it at the station and you have enough time to get the warrant by putting it on airplane mode. Well, you don't necessarily have enough time to get the warrant if you do it at the scene. That's certainly true. I think even I disagree. Put it on airplane mode. Even if you bring it back, the assumption that we're going to have airplane mode and that the Court should craft a constitutional rule around airplane mode assumes that cell phones are not going to be able to be used in airplanes in the next five years and that manufacturers will continue to make an easily available button for airplane mode. I don't think the Court should found a constitutional ruling on the assumption. Sotomayor, I don't disagree with you, but you're asking us for a constitutional principle based on technology that might or might not do something in one or more cases, but not in the general. I think what I'm trying to suggest, Justice Sotomayor, is the traditional justifications for search incident to arrest include the potential for destruction of evidence. That is very real today. It's Petitioner who's asking for a new rule. We're asking for the application of the Robinson rule, and if the Court is not willing to apply the Robinson rule, then primarily, I think, the best rule to apply would be that you do it. Kennedy, but that's not quite accurate. What would you do under the Robinson rule with an attorney's briefcase? The attorney's briefcase may present particularized problems because of attorney claim privilege. And doesn't that present the exact problem that every cell phone has? No, I was referring to the privilege rule. The lower courts that have looked at it, this Court has not, lower courts that have looked at the question have said that if a person is arrested holding a briefcase, the police can open the briefcase, whether locked or unlocked, and look at its contents. They can't just go through the contents for prurient interest. They can look, however, for evidence that's relevant to criminal activity. And they do that in a way that is minimally invasive of privacy. They're not just doing it for the sake of doing it. They're looking for evidence. Well, the tax return that's on it, some cell phones have tax returns, so you have the tax return of the jaywalker, looking for a crime. Yes. And I would acknowledge, Justice Kennedy, that if the Court is looking for a rule that limits the ability of police to search cell phones because cell phones are different from paper items in some respects, but not all, that the most reasonable rule to apply would be one which says, when there is reason to believe that there is evidence of the crime of arrest on phone, the officers can look for that. When there is not, they can't. That will work. Kagan would ask you a question about that, Mr. Dreeben, because given the variety of things that these cell phones have in them, it seems as though that's, you know, it sounds good as a limiting principle, but it ends up, you can imagine in every case that the police could really look at everything. So I'll give you an example. It's sort of like this case. Somebody's arrested for a gun crime, and now we're going to look at all the various things that might be related to a gun crime. So whether he's bought guns, whether, you know, what he's done searches for gun stores. His e-mails might say something about gun possession or gun purchase. He might have photographs of him with a gun. You know, the whole range of things could relate to that crime, couldn't it? Justice Kagan, I would acknowledge that your reasoning is correct in certain circumstances and for certain crimes. It would not be the case for a jaywalking crime or a bar fight or many other of the minor crimes, seatbelt violations, that are posited on the other side of the equation for Respondent's or Petitioner's narrower approach to cell phone searches. But I do think that a couple of things are worth thinking about. First, in a serious offense like a firearms offense, in this case a drug offense in Worry, if the police didn't get a warrant, they would be looking at all the same things, because the only way to execute the warrant on the phone would be to engage in at least a cursory search of everything on the phone to see whether it related. Kagan. Well, they would be looking at the same things, but the whole idea of a warrant is that a neutral magistrate tells you that you can look at those things and has an opportunity to limit it in whatever way the neutral magistrate feels is appropriate. That's a protection. I'm not sure that I would go so far as to say the neutral magistrate can narrow the warrant in any way that he sees appropriate. This Court's decisions in Grubbs and Dahlia say that it's not appropriate for the magistrate to prescribe the manner of executing the search. But I think the more fundamental point, and this is why I tried to start with the basic bedrock of Robinson, is that there is a different balance. Roberts. Go ahead. There is a different balance at the moment of the arrest. At that moment, society's interests are at their apogee in locating evidence relating to the crime of arrest and apprehending related suspects, and the suspect has a highly reduced privacy interest. Thank you, counsel. Four minutes, Mr. Fisher. Thank you. I think I heard about four or five different proposed rules that I want to just go through, each of them one at a time. First, the State talked about a, quote, fundamentally different rule. And I think justices have already figured out what we say at page 1718 of our reply brief, which is that would sweep in virtually everything on the phone. To the extent it wouldn't, you'd have a really difficult struggle on a case-by-case basis to answer the very difficult question whether any particular app had fundamentally different information than existed in the non-digital world. I also heard a suggestion that, well, if a laptop or a smartphone is on somebody's person, that's different than if it's sitting next to them. That's not correct if what the government says about its Shamel, about passwords and wiping, satisfies Shamel. Remember, Shamel gives authority to search and seize without a warrant anything in the grab area if there's a destruction argument. So the person who's arrested sitting at his desk at the office and reaching area from his computer would be open to a full search under the government's rule. There was also discussion about the exigencies at the scene of an arrest, needing to prevent a remote wipe, preventing a password from kicking in. The first thing to make sure you understand is those arguments can apply only at the scene. They don't apply in this case where an officer takes the phone back to the police station and two hours later searches through it at his leisure. So all the arguments about at the scene and what an officer needs to be able to do at the scene can be left for another case. And I think Justice Breyer is exactly right. At the very best, what the government has shown is that there may be certain tightly limited circumstances where exigent circumstances would apply. And I want to say just a quick thing. On the password question in particular, which we didn't talk about but may come up in the next argument, pages 12 to 14 of our reply brief, we outline how highly unusual as a factual matter it would be for a smartphone to be seized while it's still unlocked and for an officer not to be able to address a concern at the scene that it might lock later. And it's also worth noting that in a footnote we attach, the government is arguing in lower courts that even if it does lock, that the Fifth Amendment does not give the person the opportunity to refuse to divulge the password in response to a warrant. So the password argument doesn't have any play if the government wins the argument it's making in the lower courts. Justice Kennedy, you suggested the possibility of distinguishing between serious and non-serious offenses. I think with all due respect, this Court's decisions in Robinson and Atwater, where that issue was squarely presented, preclude that kind of a determination for all the reasons the government argued in those cases. And then finally, Justice Scalia, you I think have mentioned a couple times the Gantt case, evidence that you think you might find on the phone. Well, there's two profound problems with that. The first is, as the Court recognized in Kilo, you need to be sure to protect the amount of privacy people had at the founding. And as I said in my opening, the fact that somebody might incidentally have an item on his person, even in the rare case diary or address book, are leagues away from the kind of information people have now that were stored in the home and that were sacrosanct at an arrest. And that's what the thread throughout history says, is an arrest cannot be an occasion to do that kind of a search. And, Justice Kagan, you're exactly right. If you run the Gantt test through the world of crimes, the government might be able to identify a crime here or there that would be difficult to make an argument about. But lots of minor crimes like speeding, as we point out in our brief, DUI, littering, all kinds of minor crimes, the person can make a fairly convincing argument sometimes that evidence on the phone would be relevant to that crime of arrest. And so I think that brings me where I want to end, which is understanding what the rule the government propounds would do in terms of just ordinary police work. Remember, this case starts with a traffic stop for an expired license plate. It is everyday police work that traffic stops are the beginning of criminal investigations and a leverage point into searches. If you adopt a rule that says, even a Gantt rule, that says if you can make an argument that evidence on the phone would be relevant to the crime of arrest, take the suspended license. You may have an e-mail from the DMV telling you, you better come in and renew. If that opens up every American's entire life to the police department, not just at the scene, but later at the station house and downloaded into their computer forever, I think you will fundamentally have changed the nature of privacy that Americans fought for at the founding of the Republic and that we've enjoyed ever since. Roberts. Thank you, counsel. The case is submitted.